USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/05/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM VASQUEZ,

                              Plaintiff,

       -against-

SHAMEED YADALI, JOSEPH MERLA, SGT.
KENNETH TROMBLEY, AND JOHN DOES,

                              Defendants.

No. 16-cv-895 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kim Vasquez ("Plaintiff") brings this action, *pro se*, pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants State Trooper Shameed Yadali, State Trooper Joseph Merla, Sergeant Kenneth Trombley (together, the "Represented Defendants"), and John Does. (Third Am. Compl. ("TAC"), ECF No. 56.) Plaintiff sets forth claims, stemming from a vehicular traffic stop and related criminal proceedings, under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution. (*Id.*)

Presently before the Court is the Represented Defendants' motion to dismiss.[1] (ECF No. 69.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Factual Background

The following facts are taken from Plaintiff's Third Amended Complaint ("TAC") and are accepted as true for purposes of this motion.

On April 15, 2015, at about 8:45 p.m., Plaintiff was driving southbound on Interstate 87 when the hood of his car popped up and cracked his car's windshield. (TAC ¶ 1.) Plaintiff drove his car to

---

[1]    As only the Represented Defendants are movants, the Court does not address the sufficiency of any claims
against the John Doe defendants at this time.

the shoulder of the highway, and he and his passenger, David Butterfield, attempted to tie down the car's hood with a rope. (*Id.* ¶ 2.) While the two men worked on the car, a New York State Trooper vehicle, driven by an unidentified officer, arrived on the scene. (*Id.* ¶ 3.) Plaintiff approached the officer and explained his situation. (*Id.*) The officer then instructed Plaintiff to drive to a body shop or mechanic shop, and, shortly after, Plaintiff proceeded to do so. (*Id.* ¶¶ 4-5.)

Approximately three minutes later, at 8:48 p.m., Plaintiff was pulled over by State Trooper Yadali ("Yadali") and State Trooper Merla ("Merla"). (*Id.* ¶ 6.) Yadali ordered Plaintiff out of the vehicle and subjected him to a breathalyzer test. (*Id.* ¶ 7.) According to the test, Plaintiff's blood alcohol level was 0.00. (*Id.* ¶ 7 & p. 16.) Yadali and Merla thereafter searched Plaintiff's car. (*Id.* ¶ 8.) Following the search, Plaintiff was arrested, while the arresting officers impounded and towed away his car. (*Id.* ¶ 9.) Upon his arrest, Plaintiff was taken to Nyack Hospital in handcuffs. (*Id.* ¶ 10.) At the hospital, Plaintiff had his blood drawn. (*Id.*) Plaintiff contends that the officers were "desperate to accuse [him] of being under the influence of something." (*Id.*)

After the blood test was complete, Plaintiff was transported to the "State Trooper Station." (*Id.* ¶ 11.) Plaintiff remained detained at the station until the next morning. (*Id.*) During his detention, Plaintiff was handcuffed to a wooden bench and given a blanket so that he could sleep on the bench. (*Id.* ¶ 12.) Plaintiff alleges that these sleeping conditions were very painful and uncomfortable. (*Id.* ¶ 13.) Specifically, Plaintiff alleges that his wrists had become numb as a result of the handcuffs irritating his carpal tunnel syndrome, leading to "handcuff neuropathy." (*Id.* ¶ 15) The officers at the station did nothing to ameliorate Plaintiff's sleeping conditions. (*Id.* ¶ 14.)

The next day, on April 16, 2015, Plaintiff was taken to the Orangetown Justice Court of Rockland County. (*Id.* ¶¶ 15-16; *see also id.* p. 18.) The court arraigned Plaintiff on charges of violating, *inter alia*, New York State Vehicle and Traffic Law ("VTL") Sections 1192(4) (driving while impaired with drugs) and 375(22) (operation of motor vehicle with broken glass that distorts

visibility).[2]  (*Id.* ¶ 16; *see also id.* p. 18.)  Following the arraignment, the court remanded Plaintiff to the Rockland County Correctional Facility ("RCCF"), without bail.  (*Id.* ¶ 17.)  Plaintiff remained at RCCF until April 17, 2015, when he was ordered to be released on his own recognizance because the bail set was deemed excessive.  (*Id.* ¶ 20; *see also id.* p. 14.)  Several months later, on January 12, 2016, all charges stemming from Plaintiff's April 15, 2015 arrest were dismissed.  (*Id.* ¶ 27.)

According to Plaintiff, Yadali and Merla fabricated allegations and falsified records to procure Plaintiff's arrest.  (*Id.* ¶ 24.)  Meanwhile, Trombley—Yadali's supervisor—neither verified the facts presented by Yadali and Merla nor monitored their actions.  (*Id.* ¶ 25.)  Instead, Trombley merely endorsed the arrest without review.  (*Id.*)

## II.    Procedural Background

Plaintiff commenced this action on February 4, 2016, naming only Rockland County as a defendant.  (ECF No. 2.)  On October 10, 2016, the Court dismissed Plaintiff's complaint, but granted him leave to replead.  (ECF No. 5.)  Thereafter, on November 22, 2016, Plaintiff filed the First Amended Complaint ("FAC"), now naming as defendants "New York State Trooper Police Officer(s) John Doe I and John Doe II" and "Supervising Officer John Doe."[3]  (ECF No. 10.)  On January 9, 2017, the Court directed (1) the Attorney General of the State of New York to identify the defendants named in Plaintiff's amended complaint and (2) Plaintiff to file a second amended complaint naming those newly identified defendants.  (ECF No. 13.)

 On March 29, 2017, Plaintiff filed his Second Amended Complaint ("SAC"), now naming as defendants Yadali, Merla, Trombley, and John Does.  (ECF No. 21.)  The Court issued an order of service on August 10, 2018 and summons were returned executed on September 27, 2018.  (ECF Nos.

---

[2]    Plaintiff was also issued an appearance ticket for criminal possession of a controlled substance in the seventh degree.  (*Id.* p. 19.)  Plaintiff maintains this was a false accusation created by the officers.  (*Id.* ¶ 23.)

[3]    Defendant Rockland County was no longer listed as a defendant.  (*Id.*)

40-43.)  Thereafter, on November 16, 2018, the Represented Defendants filed a letter motion seeking leave to file a motion to dismiss the SAC.  (ECF No. 49.)  Seemingly in response, Plaintiff filed his TAC on January 7, 2019.  (ECF No. 56.)  Although Plaintiff had not sought the Court's leave, the Court nevertheless accepted the TAC as the operative complaint, but granted the Represented Defendants leave to file their motion to dismiss.  (ECF No. 59.)  On July 1, 2019, the Represented Defendants filed their motion to dismiss.

Notably the TAC omits facts previously detailed in the FAC.  Specifically, although the FAC had alleged that the arresting officers had "smelled marijuana in the Plaintiff['s] vehicle." (FAC ¶ 21), and the SAC maintained that Yadali had "created a false excuse alleging that the Plaintiff was under the influence of 'something.'" (SAC ¶ 15), the TAC is silent about why Yadali ordered Plaintiff out of his vehicle.  Moreover, although Plaintiff had alleged in the FAC that he had given "both officers John Doe I and II permission to search [his] vehicle," the TAC now alleges that Yadali and Merla searched his vehicle without his consent.  (*Compare* FAC ¶ 27 *with* TAC ¶ 8.[4])

### III.     Facts and Documents the Court May Consider

#### A.  Allegations in Plaintiff's Earlier Complaints

The Represented Defendants ask that this Court take notice of two specific facts that were included in Plaintiff's FAC.  *First*, the Represented Defendants request that the Court credit the FAC's allegation that Yadali and Merla "detected an odor of marijuana emanating from" Plaintiff's vehicle. (*See* Represented Defs. Mem. of Law in Support of Mot. to Dismiss ("Defs. Mot."), ECF No. 70, at 6 (citing FAC ¶¶ 21-22).)  *Second*, the Represented Defendants ask the Court to find that Plaintiff consented to the search of his vehicle, as previously alleged in the FAC.  (*Id.* at 8 (citing FAC ¶ 27).)

---

[4]     The SAC alleges that Yadali and Merla searched Plaintiff's vehicle but is silent about whether he consented. (*See* SAC ¶ 16.)

In both cases, the Represented Defendants contend that the Court is authorized to accept these facts as true because the TAC directly contradicts the original pleadings. (*Id.*) As explained below, the Court agrees that it may find that Plaintiff consented to the search of his vehicle. However, the Court does not agree that it is authorized to conclude that the arresting officers detected an odor of marijuana prior to their arrest.

An "amended complaint ordinarily super[s]edes the original[] and renders it of no legal effect." *Dluhos v. Floating and Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) (internal quotations omitted) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "However, where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading.'" *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070 (MKB), 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014). "[T]he mere fact that a plaintiff has chosen to omit, for strategic reasons, a fact alleged in an earlier pleading does not entitle the Court to consider that fact once it has accepted the amended pleading for filing," unless the omitted fact directly contradicts earlier allegations. *See Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *4 (S.D.N.Y. Mar. 9, 2017) (concluding that omission of a fact alleged in an earlier pleading did not entitle the court to consider the fact once it had accepted an amended pleading because, *inter alia*, the "omission [did] not contradict earlier facts"); *Brooks*, 2014 WL 1875037 at *3 ("Plaintiff's Amended Complaint omits a fact that was included in his original Complaint, but does not 'directly contradict' any factual allegations made in the original Complaint.").

Here, Plaintiff previously alleged that he gave "both officers John Doe I and II permission to search [his] vehicle." (FAC ¶ 27.) Plaintiff now maintains that he never consented to the officers' search of his vehicle.[5] (TAC ¶ 8.) Plainly then, the TAC's "directly contradicts the facts set forth in

---

5       When the Represented Defendants raised this shift in their moving papers (*see* Defs. Mot. 8), Plaintiff revised his explanation to state that he did not *voluntarily* give consent to search his vehicle without a warrant. (Pl. Opp.

[the] original complaint." *See Wallace v. N.Y.C. Dep't of Corrs.*, No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996). As such, the Court will credit Plaintiff's previous admission that he consented to the search of his vehicle.

Plaintiff's omission of the fact that the arresting officers detected odor emanating from his car warrants a different conclusion. Although Plaintiff's omission appears to be strategic, similar to the circumstances in *Vasquez*, *see* 2017 WL 946306 at *4, the Court cannot discern any basis to conclude that the TAC directly contradicts the FAC or SAC. And even if the omitted fact may be dispositive of the outcome of the Represented Defendants' motion, such considerations do not bear on whether an omission directly contradicts previous allegations. *See Brooks*, 2014 WL 1875037 at *3 (declining to accept facts alleged in original complaint that were subsequently omitted in amended complaint, even if those facts implicated whether plaintiff's action was time barred). Simply put, the TAC has replaced the original complaint's allegations regarding the circumstances underlying the officer's on-scene observations, and the Court declines to consider the facts alleged in the FAC.

### B. Extraneous Documents

Both parties urge this Court to consider several documents that were not included in Plaintiff's TAC. Those documents include (1) a copy of the Motion to Dismiss filed in Plaintiff's criminal proceedings (Defs. Mot. Ex. A); (2) a copy of the Toxicology Report prepared by the New York State Police Forensic Investigation Center (*id.* Ex. B; Pl. Opp. Ex. H); (3) a consent form purportedly signed by Plaintiff (Defs. Mot. Ex. C; Pl. Opp. Ex. I); (4) an affidavit submitted by David Butterfield (the "Butterfield Affidavit") (Pl. Opp. Ex. A); (5) a Vehicle Impound and Inventory Record (*id.* Ex. F); an Arrest Report (*id.* Ex. G); and (6) the affidavits of Kareem Davis and Anthony Echevarria

---

and Response to Defs. Mot. ("Pl. Opp."), ECF No. 71, ¶ 30.) Although the Court may consider new factual allegations in a *pro se* plaintiff's opposition, the facts must be "consistent with the complaint." *Brooks v. Jackson*, No. 11 Civ. 6627(JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013). The Court concludes that this new assertion in Plaintiff's opposition is not consistent with his contention in the TAC. But even if the Court did consider this new explanation, it also directly contradicts the FAC's allegation.

(*id.* Ex J).   The Court now considers whether it may refer to these documents in resolving the Represented Defendants' motion to dismiss.

On a motion to dismiss, a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).   This generally includes "the factual allegations in . . . [a] complaint, which are accepted as true, [] documents attached to the complaint as an exhibit or incorporated in it by reference, . . . or [] documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).   A court may also take judicial notice of public records, "including arrest reports, criminal complaints, indictments and criminal disposition data."  *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (citing *Vasquez v. City of New York*, No. 99 Civ. 4606, 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000)).

As an initial matter, it is well established that, on a motion to dismiss, a court may not "consider factual averments contained in affidavits."  *See Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).   Accordingly, the Court declines to consider the facts detailed in either the Butterfield Affidavit or the affidavits of Kareem Davis and Anthony Echevarria.

Turning to the remaining documents, it is true, as the Represented Defendants note, that the Court may take judicial notice of public records, which can include documents from prior criminal proceedings.   The issue here is that none of the materials submitted for this Court's consideration are matters of public record.   Indeed, these materials were subject to a seal order.  (TAC p. 13.)   Although, on February 27, 2017, the Court vacated all seal charges against Plaintiff for purposes of this action, the order made it clear that "the records and papers [would] otherwise remain confidential."  (ECF No. 16 ¶ 6.)   The Court therefore finds no basis to take judicial notice of the documents the

parties submitted. *See Weaver v. City of New York*, No. 13-cv-20(CBA)(SMG), 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) (declining to judicially notice sealed information from a criminal case).

Because the Court declines to take judicial notice of these documents, the parties remaining hope necessarily hinges on the documents being incorporated by reference or integral to the complaint. For a document to be incorporated by reference, the complaint must make a "clear, definite, and substantial reference" to it. *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 277 (S.D.N.Y. 2013). "Mere discussion or limited quotation of a document in a complaint" does not qualify as incorporation. *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) (internal quotations omitted). But even where a document is not incorporated by reference, a court "may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). This requires a party to establish that the plaintiff had "actual notice" of the documents and relied upon them in setting forth his or her claim. *Id.*; *see also Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 423 n.16 (S.D.N.Y. 2013) ("In order for the contents of a document to be deemed *integral* to the complaint, they must be deemed necessary to the plaintiff's statement of a claim under Rule 8."). Notably "a document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations"; reliance is key. *Williams v. City of New York*, No. 14-cv-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015).

To begin, neither party has established that the submitted documents are incorporated in Plaintiff's complaint by reference. Far from making a "clear, definite, and substantial reference" to any of the above referenced documents, the TAC fails to reference these documents at all. Even if liberally construing the TAC, the Court can only, at most, discern a potential passing reference, if at all, to some of the documents. However, mere passing references do not amount to an incorporation by reference. *See McLennon v. City of New York*, 171 F. Supp. 3d 69, 90-91 (E.D.N.Y. 2016)

(explaining that passing reference to documents from an underlying criminal proceeding is insufficient to render documents incorporated by reference).

Both parties have likewise failed to establish that any of the above referenced documents are integral to Plaintiff's complaint. To be sure, these documents may certainly be highly relevant to the TAC's allegations and could prove critical on a dispositive motion. But here, there is no indication in the complaint that these documents were either necessary for Plaintiff's statement of the claim or heavily relied upon by him when he drafted the TAC. *See McLennon*, 171 F. Supp. 3d at 91 ("Because it is not apparent that McLennon relied on the criminal complaint in drafting the Amended Complaint, the Court will not consider it."); *Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 396 (S.D.N.Y. 2015) ("The Court will not consider the Incident Report, depositions, or the Misdemeanor Complaint, as 'there is no indication in the record that [Plaintiff] relied on [them] in drafting the [Amended Complaint].'"). The Court will not consider any extraneous documents as integral to the complaint.[6]

## LEGAL STANDARD

### A. Rule 12(b)(6)

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be

---

[6]     Even if the Court did consider the extraneous documents submitted by both parties, the Court notes that those documents would not alter the Court's decision.

denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe a *pro se* complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## B. Section 1983

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

**DISCUSSION**

## I.    Plaintiff's False Arrest Claim

In the TAC, Plaintiff alleges that, while driving his car, he was stopped by Yadali and Merla

and eventually was arrested for no reason.  (TAC ¶¶ 7, 9.)  In moving to dismiss, the Represented

Defendants contend that probable cause existed to arrest Plaintiff.  (Defs. Mot. 6.)  As it is ultimately

not evident that probable cause existed from the face of the TAC, the Court disagrees.

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under

New York law." *Nelson v. City of New York*, No. 18 Civ. 4636 (PAE), 2019 WL 3779420, at *5

(S.D.N.Y. Aug. 9, 2019) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528

U.S. 946 (1999)).  Under New York law, a plaintiff alleging false arrest must show that "(1) the

defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."

*Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d

98, 102 (2d Cir. 1994)) (internal quotations omitted).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense

to an action for false arrest.'"  *Weyant*, 101 F.3d at 852.  "An officer has probable cause to arrest

when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that

are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

committed or is committing a crime.'"  *Humbach v. Canon*, No. 13-CV-2512 (NSR), 2014 WL

6057703, at *7 (S.D.N.Y. Nov. 12, 2014) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

"The question of whether or not probable cause existed may be determinable as a matter of law if

there is no dispute as to the pertinent events and the knowledge of the officers."  *Nelson*, 2019 WL

3779420 at *6 (quoting *Weyant*, 101 F.3d at 852).  To warrant dismissal on a motion to dismiss,

"plaintiff's version of events [must] establish[] probable cause to arrest."  *See Jones v. Maples/Trump*,

11

No. 98 CIV. 7132(SHS), 2002 WL 287752, at *6 (S.D.N.Y. Feb. 26, 2002); *see also Cabble v. City of New York*, No. 04 CV 9413(LTS), 2009 WL 890098, at *5 (S.D.N.Y. Mar. 30, 2009) (explaining that "courts have held that a Section 1983 claim may still be dismissed if the plaintiff's own version of events in the Complaint establishes a probable cause basis to arrest").

Here, Plaintiff has plainly met the first three elements of his false arrest claim. He was arrested, which was Yadali and Merla's intent, and the Court can infer that Plaintiff did not consent to the arrest. (*See* TAC ¶¶ 6-9, 24, 30.) The parties thus focus on whether the officers had probable cause for the arrest. For their part, the Represented Defendants continually cite to contentions in the FAC for the proposition that probable cause existed for an arrest. (Defs. Mot. 6-7.) As noted above, however, such allegations are nowhere in the TAC and thus are not presently before the Court. Plaintiff, conversely, puts great stock in the fact that (1) the Orangetown Justice Court ordered him to be released on his own recognizance and (2) criminal charges against him were ultimately dismissed. (*See* TAC ¶¶ 27, 29; Pl. Opp. ¶¶ 22, 29.) But as Defendants correctly note, "[f]or the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to" the arrest. *Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir. 1990) (citing *Brinegar v. United States*, 338 U.S. 160, 170-78 (1949)). Plaintiff also emphasizes the results of the breathalyzer test, which yielded a blood alcohol reading of 0.000. (Pl. Opp. ¶¶ 7-8, 21-22.) Yet the basis of his arrest appears to be a violation of VTL § 1192(4), which relates to the operation of a motor vehicle while impaired by drugs.[7] (*See* TAC p. 18).

---

[7]     Plaintiff, in his opposition, maintains that he was arrested for violating VTL § 1192(3), rather than VTL § 1192(4). (Pl. Opp. ¶¶ 19, 28.) Plaintiff points to the "Felony Complaint," attached to the TAC on page fifteen and as Plaintiff's Exhibit B, for support. (*Id.* ¶ 20.) This appears to misconstrue the Felony Complaint's charges, which broadly references VTL § 1192. The Felony Complaint does, at one point, cite VTL § 1192(3), but it does so in connection with a description of Plaintiff's prior conviction, dated September 2, 2007. (*Id.* Ex. B.).

As the above makes clear, neither party has squarely addressed whether the TAC, on its face, plausibly alleges the absence of probable cause. The Court accordingly turns to a review of the pleadings to ascertain the plausibility of Plaintiff's false arrest claim. Upon this review, Plaintiff's false arrest claim survives the present motion to dismiss, albeit barely. Plaintiff alleges that he was stopped by Yadali and Merla, ordered out of his car, and administered the breathalyzer test. (TAC ¶¶ 6-7.) He was then handcuffed and arrested for "no reason." (*Id.* ¶ 9; *see also* Pl. Opp. ¶ 27.) Plaintiff maintains that, to ultimately make the arrest and obtain the charges against him, the "police officers falsified reports . . . to attempt to make it appear as [if there was] probable cause." (TAC ¶ 30; *see also id.* ¶¶ 24, 26.) Taken together, Plaintiff's allegations in support of his false arrest claim are thin, at best. But the Court must accept the allegations as true and draw all reasonable inferences in Plaintiff's favor. Upon doing so, the Court concludes that the TAC sufficiently alleges the absence of any applicable privilege protecting the arrest. Specifically, Plaintiff's complaint plausibly disputes whether Yadali and Merla had probable cause to arrest him by alleging instances of false representations and accusations, while there is nothing on the face of the TAC that supports an inference that probable cause existed. *See Dotson v. Farrugia*, No. 11 Civ. 1126(PAE), 2012 WL 996997, at *4 (S.D.N.Y. Mar. 26, 2012) (denying motion to dismiss where the complaint's allegations, taken as true, "plausibly challenge[d] the State Defendants' probable cause to arrest").

The Court notes that the merits of Plaintiff's claim appear suspect. However, it is simply the Court's role at this juncture to determine whether Plaintiff has stated a claim for relief that is plausible on its face. The Court therefore DENIES the Represented Defendants' motion to dismiss Plaintiff's false arrest claim against Yadali and Merla.

## II.   Plaintiff's Illegal Search Claim

Plaintiff alleges in the TAC, and strongly contends in his opposition, that he did not consent to the search of his vehicle. (TAC ¶ 8; Pl. Opp. ¶ 30.) In response, the Represented Defendants

primarily argue that Plaintiff did in fact consent to the search of his vehicle, as he previously alleged in his FAC. (Defs. Mot. 8.) Accordingly, the Represented Defendants urge this Court to conclude that Yadali and Merla's search of Plaintiff's vehicle did not run afoul of the Fourth Amendment. (*Id.*) Accepting Plaintiff's previous admission as true, the Court agrees.

The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Quinones*, 457 F. App'x 68, 69 (2d Cir. 2012) (quoting *Samson v. California*, 547 U.S. 843, 848 (2006)). A search will be deemed reasonable where officers are provided voluntary consent for the search. *See United States v. Como*, 340 F.2d 891, 893 (2d Cir. 1965); *Handy v. City of New Rochelle*, 198 F. Supp. 3d 298, 310 (S.D.N.Y. 2016) ("In order for a search on consent to be reasonable, the consent must be given voluntarily.").

Here, as explained above, Plaintiff had previously alleged that he gave the officers permission to search his vehicle. (FAC ¶ 27.) Therefore, even if Plaintiff may have plausibly alleged a false arrest, Plaintiff's consent to the vehicular search—which seemingly yielded favorable results for Plaintiff (*see* Pl. Opp. ¶ 27)—extinguishes any claims Plaintiff may have had related to the vehicle search. The Court GRANTS the Represented Defendants' motion to dismiss Plaintiff's unlawful vehicular search claim.

## III. Plaintiff's Improper Impoundment Claim

The Represented Defendants contend that, because Plaintiff was operating his car with a broken windshield, he was in violation of VTL § 375(22). (Defs. Mot. 9.) As a result, the Represented Defendants argue that Yadali and Merla "had no choice but to impound Plaintiff's vehicle." (*Id.*) The Court agrees.

"The impoundment of a vehicle may implicate rights guaranteed by the Fourth Amendment's protection against unreasonable searches and seizures." *Bey v. Dist. of Columbia*, No. 17-CV-620 (MKB), 2018 WL 5777021, at *5 (E.D.N.Y. Nov. 1, 2018) (citing *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005)). Still, "[i]n the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." *S. Dakota v. Opperman*, 428 U.S. 364, 368 (1976). To this end, "it is reasonable for police officers to impound the vehicle under [] community care functions where, among other things, the vehicle would otherwise . . . threaten public safety . . . ." *United States v. Colon*, No. 10 Cr. 498 (RPP), 2011 WL 569874, at *14 (S.D.N.Y. Feb. 8 2011).

Here, to the extent that Plaintiff challenges the impoundment of his vehicle, he has not provided sufficient allegations to support a Fourth Amendment claim. Plaintiff alleges that, while he was driving, the hood of his vehicle popped up and "cracked [his] windshield." (TAC ¶ 1.) The damage was seemingly enough to warrant him immediately taking the car to a mechanic shop. (*Id.* ¶ 4; Pl. Opp. ¶ 32.) And as documents affixed to the TAC make clear, Plaintiff was arraigned on a violation of VTL § 375(22), which relates to the operation of a motor vehicle with "glass which is so broken, fractured or discolored as to distort visibility." (*See* TAC p. 18.)

Plaintiff does not challenge these facts. In fact, Plaintiff fails to allege any facts negating an inference that his vehicle posed a threat to public safety. *See Bey*, 2018 WL 5777021 at *5 (explaining that plaintiff failed to provide sufficient allegations to support his impoundment claim where he did not allege that "the impoundment was improper because, for example, the vehicle was not impeding traffic, threatening public safety, or not potentially subject to vandalism"). Instead, Plaintiff argues that (1) he was "prevented [from] and denied . . . the right and ability to contact his own tow truck company" and (2) "the Police cannot seize [a] vehicle without a warrant." (Pl. Opp. ¶¶ 33-34.) But these contentions do not disturb the inference that officers deemed his car to be a safety risk.

In any event, even if the Yadali and Merla ran afoul of the Fourth Amendment, their conduct would still be shielded by qualified immunity. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). Applying this test here, the Court concludes that the Represented Defendants' conduct did not violate a clearly established law. Indeed, as one court as explained, "[n]either the Supreme Court nor the Second Circuit has definitively addressed the issue as to whether and under what circumstances vehicle impoundments for traffic infractions violate the Fourth Amendment." *Barnes v. City of New York*, No. 13-CV-7283 (GBD)(JLC), 2015 WL 4076007, at *10 (S.D.N.Y. July 2, 2015), *adopted by*, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015). But even if the law was clearly established, the Represented Defendants would still be entitled to qualified immunity. If, as the Represented Defendants argue, Yadali had believed that the cracked windshield on Plaintiff's car violated VTL § 375(22) and posed a threat to public safety, it would not "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See Garcia*, 779 F.3d at 92 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Barnes*, 2015 WL 4076007 at *10 (concluding that defendant's belief that he was authorized under the VTL to remove a car that was in violation of Section 402(1)(a) of the VTL would "fall[] within the zone of 'reasonable but mistaken judgments' entitled to [qualified immunity]").

In short, as it appears that Yadali and Merla's acted pursuant to their community care functions and their conduct is otherwise protected under qualified immunity, the Court GRANTS the Represented Defendants' motion to dismiss Plaintiff's impound claim.[8]

---

[8]     To the extent Plaintiff challenges the inventory search of Plaintiff's property (Pl. Opp. ¶ 31), that claim fails. The Supreme Court has held that an inventory search of a car that was lawfully seized and obtained is not an

## IV.    Plaintiff's Illegal Blood Draw Claim

The Represented Defendants seek dismissal of Plaintiff's claim that the post-arrest drawing of his blood amounted to a constitutional violation, contending that Plaintiff has failed to establish any of the Represented Defendants' personal involvement.  (Defs. Mot. 9-10.)  Plaintiff responds that it is "obvious" that the arresting officers were present for the blood draw, such that he has sufficiently pleaded personal involvement.  (Pl. Opp. ¶ 41.)  The Court disagrees.

It is well established in this circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  Here, Plaintiff alleges that he was "subjected to having a needle stuck in his body and blood drawn." (TAC ¶ 10.)  Plaintiff does not assert who ordered or conducted the blood draw; he only contends that "[t]he police officers were desperate to accuse [him] of being under the influence of something."  (*Id.*) Such allegations do not establish the personal involvement of any of the Represented Defendants.

To cure this deficiency, Plaintiff argues that "obviously the arresting officers who[] took him to Nyack hospital" were present while he was handcuffed to his bed.  (Pl. Opp. ¶ 41.)  Even according Plaintiff's contentions a liberal construction, this lone conclusory assertion is insufficient to establish that any of the Represented Defendants were personally involved in Plaintiff's post-arrest blood draw.

---

"unreasonable" search under Fourth Amendment if officers are following "standard police procedure[s]." *See Opperman*, 428 U.S. at 376; *see also United States v. Miller*, 382 F. Supp. 2d 350, 377 (N.D.N.Y. 2005) ("An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items, and to protect against false claims of loss or damage.  It is a recognized exception to the Fourth Amendment's warrant requirement. ").  Here, the impoundment, as alleged, appears to be lawful, and there is no indication that standard procedures were not followed.  The Court thus GRANTS the Represented Defendants' motion to dismiss any claims related to an inventory search of Plaintiff's car.

In sum, Plaintiff has not provided sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court GRANTS the Represented Defendants' motion to dismiss Plaintiff's blood draw claims.

## V. Plaintiff's Fourteenth Amendment Conditions of Confinement Claim

The Represented Defendants argue that Plaintiff has failed to establish that they knew, or should have known, that the Plaintiff was suffering from discomfort and pain upon being handcuffed to the wooden bench at the station. (Represented Defs. Reply in Support of Defs. Mot., ECF No. 72, at 6-7.) Plaintiff counters that he has properly pled a claim for deliberate indifference, as being handcuffed was "clearly" painful and it deprived him of "proper blood circulation for 12 hours." (Pl. Opp. ¶ 50.) The Court disagrees.

To set forth a condition of confinement claim under the Fourteenth Amendment, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions."[9] *See Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018). The deliberate indifference test for a pretrial detainee contains an objective prong and a subject prong. *Darnell*, 849 F.3d at 29.

The objective prong requires that the "deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019). A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his [or her] health." *Darnell*, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting

---

[9]    Although Plaintiff states that this claim is brought under the Eighth Amendment, a "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

*Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).  Conversely, under the subjective prong, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted).  This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

Here, Plaintiff has alleged that, because he was forced to sleep on a wooden bench while being handcuffed, he suffered pain and discomfort.  (TAC ¶ 13.)  Plaintiff further alleges that this pain and discomfort occurred because the handcuffs irritated his carpal tunnel syndrome.  (*Id.* ¶ 15.)  Notably absent, however, is any allegation that Plaintiff informed the Represented Defendants that he was suffering from pain or discomfort or that he even had carpal tunnel syndrome.  Instead, all Plaintiff contends is that "several officers . . . ignored [his] clear inhumane treatment," thus infringing the Eighth Amendment's protections.  (Pl. Opp. ¶ 54.)  Even assuming Plaintiff had alleged a sufficiently serious harm, *see Smith v. Conway*, No. 10-CV-00824A(F), 2013 WL 4046290, at *17 (W.D.N.Y. Aug. 7, 2013) (explaining, on summary judgment that plaintiff's degenerative back condition and carpal tunnel syndrome constituted a sufficiently serious condition under the Eighth Amendment); *Burton v. Lynch*, 664 F. Supp. 2d 349, 363-65 (S.D.N.Y. 2009) (finding that carpal tunnel syndrome that required surgery constituted a sufficiently serious injury), Plaintiff has failed to allege that the Represented Defendants (especially Yadali or Merla) knew about—let alone were deliberately indifferent to—Plaintiff's conditions.  Without more, Plaintiff fails to plausibly allege a conditions of

confinement claim. The Court GRANTS the Represented Defendants' motion to dismiss Plaintiff's claims related to his handcuffing at the police station.[10]

## VI.    Plaintiff's Claim Against Defendant Trombley

Defendants maintain that Plaintiff has failed to allege that "Defendant Trombley was present at the time of arrest[] or . . . that [he] improperly relied on accounts provided by the officers at the scene [when] endorsing the arrest." (Defs. Mot. 14.) Plaintiff responds that Trombley, as the "supervisor [and] reviewing officer," should have noticed that the arrest report was "incomplete[] and false," thereby establishing his personal involvement in a constitutional deprivation. (*See* Pl. Opp. ¶¶ 56, 59, 62.) The Court disagrees.

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely *because* he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). Rather, a plaintiff must establish the personal involvement of a supervisory defendant through evidence of any of the following factors (the "*Colon* Factors"):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

---

[10]    As the Represented Defendants note, to the extent Plaintiff brought an excessive force claim against the Represented Defendants, he has expressly abandoned that claim in opposing the Represented Defendants' motion to dismiss. (*See* Pl. Opp. ¶¶ 46-49.) Further, to the extent Plaintiff seeks injunctive or declaratory relief related to his conditions of confinement claim (TAC ¶ 37), he is not entitled to declaratory or injunctive relief related to the past misconduct of state officials. *See Li v. Lorenzo*, 712 F. App'x 21, 23 (2d Cir. 2017) (explaining that neither injunctive nor declaratory relief are available for injuries "stemming only from past conduct" that is not still ongoing). Therefore any claims for declaratory or injunctive relief are DISMISSED.

*Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[11]

Here, Plaintiff's primary allegation against Trombley is that, as Yadali's supervisor, he "failed to verify all of the facts" underlying the arrest and merely endorsed it. (TAC ¶ 25.) Plaintiff provides more color in his opposition, explaining that had "Trombley . . . reviewed the case and reports properly[,] he would have seen that the reports were contradictive, also incomplete, and false." (Pl. Opp. ¶ 62.) Thus, the Court interprets Plaintiff's pleadings as implicating at least the first, second, and fifth *Colon* Factors. To this end, however, the mere fact that Trombley signed off on Plaintiff's arrest, without more, is insufficient to establish personal involvement in the alleged constitutional violation. *See, e.g., Demosthene v. City of New York*, No. 18-cv-1358 (ARR) (PK), 2019 WL 2436681, at *7 (E.D.N.Y. June 11, 2019) ("Though an officer can be held liable for 'verif[ying] an unlawful arrest,' plaintiff must first allege that the defendant 'had knowledge' that his actions were unlawful, and thus was aware that the investigations he approved were motivated by misconduct."); *Rodriguez v. City of New York*, No. 08-CV-04173 (RRM)(RLM), 2012 WL 1059415, at *9 (E.D.N.Y. Mar. 28, 2012) (dismissing claims, on summary judgment, against defendant because of defendant's lack of personal involvement, where the only evidence of a defendant's involvement in plaintiff's arrest was "his signature on the arrest documentation as the 'reviewing' or 'approving' officer"). In his review, Trombley was "entitled to rely on the representations of his fellow officers," and Plaintiff has offered no facts to establish, or even raise an inference, that Trombley knew, or had reason to

---

[11] Although there is a split in authority, "[t]he majority of the district courts [in this circuit] . . . have held that, absent any contrary directive from the Second Circuit, all five *Colon* Factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases). This Court has already expressed its agreement with this proposition and will apply it with equal force here. *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018).

know, that the "statements supporting the arrest were fraudulent." *Demosthene*, 2019 WL 2436681 at *9 (internal quotations omitted); *see also Alicea v. City of New York*, No. 13-cv-7073 (JGK), 2016 WL 2343862, at *6 (S.D.N.Y. May 3, 2016) (concluding that defendant entitled to qualified immunity where "he was entitled to rely on the representations of his fellow officers when he verified [plaintiff's] arrest"). Without these facts, Plaintiff fails to establish Trombley's personal involvement.

To the extent Plaintiff attempts to establish liability based on a "failure to properly train or ensure his officer was trained" (TAC ¶ 26), that claim similarly fails. A mere conclusory assertion that a supervisory defendant "failed to train and supervise subordinates is insufficient to establish personal involvement, absent some factual connection between his failure to train and the harm that eventually befell [the] [p]laintiff." *See Gantt v. Ferrara*, No. 15-CV-7661 (KMK), 2018 WL 4636991, at *6 (S.D.N.Y. Sept. 27, 2018) (dismissing claims for failure to train where complaint did not allege that defendant was "present for, let alone participated directly in, the alleged assault" and instead merely contended that defendant "encouraged misconduct . . . by not enforcing his policies and customs" and by failing to train his employees); *White v. Fischer*, No. 9:09-CV-204, 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.").

As Plaintiff does not allege any facts that establish Trombley's personal involvement, the Court GRANTS the Represented Defendants' motion to dismiss false arrest claims against Trombley for lack of personal involvement.

## VII.    Plaintiff's Substantive and Procedural Due Process Claims

Upon a close review of the TAC, the Court can discern that Plaintiff has brought substantive and procedural due process claims under the Fifth and Fourteenth Amendments, which are related to

his purported false arrest, the officers impounding his car, and the officers handcuffing of him to a wooden bench at the police station. (TAC ¶¶ 9, 12.) The Court briefly addresses these claims.

To begin, liberally construed, Plaintiff's TAC appears to invoke substantive due process claims. In general, however, where "'a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Harris v. City of New York*, No. 16-CV-1214 (PKC)(JO), 2018 WL 4471631, at *10 n.17 (S.D.N.Y. Sept. 18, 2018) ("To the extent that Plaintiff attempts to assert a separate substantive 'due process' deprivation of liberty claim based on the same conduct that underlies her Fourth Amendment claims for false arrest or unlawful strip search, this claim is dismissed as duplicative."). Here, as it pertains to Plaintiff's conditions of confinement and false arrest claims, Plaintiff's substantive due process claims are duplicative of those claims already addressed in this Opinion and Order. And to the extent Plaintiff intended to state a substantive due process claim related to the state trooper's impoundment of his car, that claim would likewise be duplicative of Plaintiff's Fourth Amendment claim based on the same conduct.

The Court, however, can also discern that Plaintiff intended to assert a standalone procedural due process claim related to the impounding of his car. To the extent Plaintiff did intend to bring such a claim, he has failed to adequately plead it. "A claim under Section 1983 for deprivation of procedural due process raises two threshold questions: (1) 'whether the plaintiff possessed a liberty or property interest' and, if so, (2) 'what process was due before the plaintiff could be deprived of that interest.'" *Colson v. New York Police Dep't*, No. 13-CV-5394 (JG), 2015 WL 64688, at *9 (E.D.N.Y. Jan. 5, 2015). Here, even if there was a liberty or property interest at stake in the post-arrest impound of his car, plaintiff has not alleged "the absence or inadequacy of any post-

deprivation hearing following the impoundment of his vehicle." *See Clynch v. Chapman*, 285 F. Supp. 2d 213, 223 (D. Conn. 2003) (explaining that plaintiff, whose car was towed away following his arrest for a DUI, failed to state a "procedural due process claim" where there was no claim about the absence or inadequacy of a post-deprivation hearing). The closest Plaintiff gets to addressing process is in his opposition, where he contends that he was "denied . . . the right and ability to contact his own tow truck company and not end up paying excessive fees." (Pl. Opp. ¶ 33.) But Plaintiff points to no authority (nor has this Court identified any) that stands for the proposition that the inability to choose one's own towing company implicates due process concerns. In any event, to the extent the Represented Defendants' conduct did implicate procedural due process concerns, the Court notes—for the same reasons articulated in its Fourth Amendment analysis—that the Represented Defendants would be protected by qualified immunity.

Accordingly, to the extent Plaintiff asserts substantive or procedural due process claims, the Court GRANTS the Represented Defendants' motion to dismiss those claims as duplicative or inadequately pled.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part. Plaintiff's Fourth Amendment claims related to the alleged improper search of Plaintiff's vehicle, the impoundment of his vehicle after his arrest, and the post-arrest blood draw are dismissed to the extent asserted against Defendants Yadali, Merla, and Trombley. Likewise Plaintiff's Fourteenth Amendment conditions of confinement claim is also dismissed as against the Defendants Yadali, Merla, and Trombley. Plaintiff's Fourth Amendment false arrest claim, as asserted against Defendant Trombley in his supervisory capacity, is also dismissed, but Plaintiff's Fourth Amendment false arrest claim against Defendants Yadali and Merla remains. As previously noted, the Court does not address the sufficiency of any claims asserted against the John Doe defendants at this time.

The Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 69. The parties are directed to confer, and then complete and submit to the Court the attached case management plan on or before April 20, 2020. The Clerk of the Court is also directed to terminate Defendant Sergeant Kenneth Trombley from this case. The Clerk is further directed to mail copies of this Opinion and Order to *pro se* Plaintiff at the address listed on ECF and to show proof of service on the docket.

Dated: March 5, 2020                             SO ORDERED:
      White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. May 2014

------------------------------------------------------------x


                              Plaintiff(s),          **CIVIL CASE DISCOVERY PLAN
                                                     AND SCHEDULING ORDER**

        - against -


                              Defendant(s).          _____ CV _____ (NSR)


------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

   1.    All parties [consent] [do not consent] to conducting all further proceedings before
         a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
         The parties are free to withhold consent without adverse substantive consequences.
         (If all parties consent, the remaining paragraphs of this form need not be
         completed.)

   2.    This case [is] [is not] to be tried to a jury.

   3.    Joinder of additional parties must be accomplished by _____.

   4.    Amended pleadings may be filed until _____. Any party
         seeking to amend its pleadings after that date must seek leave of court via motion.

   5.    Interrogatories shall be served no later than _____, and responses
         thereto shall be served within thirty (30) days thereafter.  The provisions of Local
         Civil Rule 33.3 [shall] [shall not] apply to this case.

   6.    First request for production of documents, if any, shall be served no later than
         _____.

   7.    Non-expert depositions shall be completed by _____.

         a.    Unless counsel agree otherwise or the Court so orders, depositions shall not
               be held until all parties have responded to any first requests for production
               of documents.

         b.    Depositions shall proceed concurrently.

         c.    Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge